# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**CHRISTINA SCHIPPERS,** as Personal
Representative of the Estate of Richard
Schippers, Deceased, **HEIDI C.
SCHIPPERS,** as Personal Representative of
the Estate of Shane Paul Schippers, Deceased,
**REBA Y. MAZAK,** as Personal
Representative of the Estate of Paul M.
Mazak, II, Deceased, and **DENISE
SCHIPPERS** and **SHARON COX-ESTEP,**

$\qquad$ **Plaintiffs,**

**-vs-** $\qquad\qquad\qquad\qquad\qquad$ **Case No.  5:11-cv-163-Oc-37TBS**

**UNITED STATES OF AMERICA,**

$\qquad$ **Defendant.**
_____/

## ORDER

This cause comes before the Court on Defendant UNITED STATES OF AMERICA's (the

"Government" or the "United States") Motion to Dismiss Complaint of Plaintiffs DENISE

SCHIPPERS and SHARON COX-ESTEP (Doc. No. 26), filed on May 16, 2011; Plaintiffs DENISE

SCHIPPERS's and SHARON COX-ESTEP's Response in Opposition (Doc. No. 35), filed on May

31, 2011; Plaintiff REBA Y. MAZAK's ("Mazak") Motion to Dismiss Counterclaim (Doc. No. 61),

filed on August 4, 2011; the Government's Response in Opposition (Doc. No. 67), filed on August

16, 2011; Mazak's Reply to Government's Response in Opposition (Doc. No. 77), filed on September

9, 2011; Plaintiffs Sharon Cox-Estep's and Denise Schippers's Motion to Apply Texas Law to

Liability and Damages (Doc. No. 75), filed on September 2, 2011; the Government's Brief in Support for the Application of Texas Law to Liability and Florida Law to Damages (Doc. No. 72), filed on September 2, 2011; Plaintiff CHRISTINA SCHIPPERS's Memorandum on Choice of Law (Doc. No. 73), filed on September 2, 2011; Mazak's Memorandum on Choice of Law (Doc. No. 74), filed on September 2, 2011; and, Plaintiff HEIDI C. SCHIPPERS's ("Heidi Schippers") Brief on Choice of Law (Doc. No. 76), filed on September 2, 2011. These filings have the common goal of seeking a determination by the Court as to whether the law of Florida or Texas, or some combination of each, will apply to the issues of liability and damages.

## BACKGROUND

On October 26, 2009, a twin-engine Beechraft King Air crashed near Benavides, Texas. All four occupants–pilot Paul M. Mazak, and passengers Richard K. Schippers, Shane P. Schippers (Richard's son) and Malcolm A. Lavender–passed away. The decedents[1], who were returning to Florida from a hunting trip in South Texas, were residents of Florida. Christina Schippers, Heidi Schippers, and Mazak, as personal representatives of the estates of Richard K. Schippers, Shane P. Schippers, and Paul M. Mazak, respectively, and two potential estate beneficiaries, Denise Schippers and Sharon Cox-Estep,[2] filed separate actions against the United States under the Federal Torts Claim Act.[3] In each of those actions, it is alleged that the Federal Aviation Administration ("FAA")

---

[1] In this Order, "decedents" refers to Paul M. Mazak, Richard K. Schippers, and Shane P. Schippers.

[2] Denise Schippers is the sister of Shane P. Schippers and adult daughter of Richard K. Schippers. Sharon Cox-Estep is the mother of Shane P. Schippers.

[3] Collectively, the Court refers to these individuals as "Plaintiffs."

personnel at the Houston Air Route Traffic Control Center ("Houston Center") located in Houston, Texas, were negligent.  In general terms, Plaintiffs claim that the negligence of an air traffic controller in the Houston Center, as well as failures of the FAA to train and supervise that controller, were the proximate cause of the crash.  The Government, in addition to denying the allegations of negligence, contends that the pilot, Paul M. Mazak, was totally or partially responsible for the crash.  The Court consolidated these actions for pre-trial and discovery purposes.  (*See* Doc. Nos. 18, 25, 60.)

## DISCUSSION

Plaintiffs brought the instant action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  Under the FTCA, "the liability of the United States for an injury is to be determined 'in accordance with the law of the place where the act or omission occurred.' " *Foster v. United States*, 768 F.2d 1278, 1280 (11th Cir. 1985) (quoting 28 U.S.C. § 1346(b)).  This includes the choice-of-laws doctrines of that jurisdiction.  *Richards v. United States*, 369 U.S. 1, 9 (1962).  In this case, the aircraft was being controlled from the ground by air traffic controllers located in the Houston Center.  Thus, the alleged negligence having occurred in Texas, neither side disputes that the Texas choice-of-law doctrines govern this case.

*A.    Texas's Conflict-of-Laws Principles*

Texas follows the "most significant relationship" test as enunciated in sections 6 and 145 of the Restatement (Second) of Conflict of Laws.[4]  *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000).  The determination of which state has the most significant relationship to the dispute involves a two step process.  First, the Court must examine the four contacts identified in Restatement

---

[4] Florida also follows the "most significant relationship" test.  *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

-3-

(Second) § 145 to determine which states may have an interest in the application of their law to the case.  Next, using the criteria in Restatement (Second) § 6, the Court balances and evaluates the interests of those states to determine their relative importance with respect to the applicable law.

Section 145 of the Restatement (Second) provides:

(1)     The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the  principles stated in § 6.

(2)     Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a)     the place where the injury occurred,
(b)     the place where the conduct causing the injury occurred,
(c)     the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d)     the place where the relationship, if any, between the parties is centered.

*Id.*  Section 6 of the Restatement (Second), entitled Choice of Law Principles, provides:

(1)     A court, subject to constitutional restrictions will follow a statutory directive of its own state on choice of law.

(2)     Where there is no directive, the factors relevant to the choice of the applicable rule of law include:

(a)     the needs of the interstate and international systems,
(b)     the relevant policies of the forum,
(c)     the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,
(d)     the protection of justified expectations,
(e)     the basic policies underlying the particular field of law,
(f)     certainty, predictability and uniformity of result, and
(g)     ease in the determination and application of the law to be applied.

*Id.*

If no conflict exists between the interested states' laws, the Court need not make a choice-of-law determination. *See Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 313 (Tex. Ct. App. 2004). "A 'false conflict' exists where the laws of the interested jurisdictions are (1) the same; (2) different but would produce the same outcome under the facts of the case; or, (3) when the policies of one jurisdiction would be furthered by the application of its laws while the policies of the other jurisdiction would not be advanced by the application of its laws." *Chapman v. DePuy Orthopedics, Inc.*, 760 F. Supp. 2d 1310, 1313 n.3 (M.D. Fla. 2011). If no conflict exists, "it is an established tenet of modern conflicts law that the law of the interested state should apply." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984).

B.    *Identification of Interested States*

To discharge the analysis mandated by the Restatement (Second), the Court must first determine which states have interests in applying their laws to the present dispute. Applying the § 145(2) factors, the Court finds, and the parties agree, that Florida and Texas have interests in this case. First, Florida has an interest in applying its laws because all of the decedents, all of the estates, all of the estates' representatives, and all of the potential beneficiaries are Florida residents. (*See generally* Doc. Nos. 40 and 52.) Second, Texas has an interest to the extent that the injury and some of the alleged misconduct[5] occurred there and that it is the place where the relationship is centered.[6] Section

---

[5] Plaintiffs allege a lack of adequate training and supervision. The record is not sufficiently developed to determine whether this alleged misconduct took place in Texas or elsewhere.

[6] The Court concludes that the center of the relationship is in Texas because the decedents' aircraft departed from Texas; was flying through airspace controlled by the Houston Center under a plan approved by that Center; the clearances and instructions were issued from that Center; the decedents were in communication with the Houston Center at the time of the crash; and, the crash itself occurred in Texas. *See Foster v. United States*, 768 F.2d 1278, 1284 (11th Cir. 1985).

145(2) therefore reveals that Florida and Texas have interests in applying their respective laws to the present dispute.

C.      *Evaluation of Florida's and Texas's Laws*

Having identified the two interested states, the Court now evaluates the differing laws.  There are five areas of law in this case with respect to which Florida and Texas differ: (1) comparative negligence, (2) contribution, (3) wrongful death actions, (4) survivor damages, and (5) survival actions.  The Government argues that Texas law should apply to liability and Florida law should apply to damages determination.  (*See generally* Doc. No. 72.)  Plaintiff Mazak argues that Florida law should apply across the board (*see generally* Doc. No. 74), while Plaintiffs Sharon Cox-Estep and Denise Schippers contend that Texas law should govern this dispute in its entirety (*see generally* Doc. No. 75).[7]

**1. Comparative Negligence**

Florida tort law applies pure comparative negligence principles.  Fla. Stat. § 768.81(2) ("In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery."); *see Hoffman v. Jones*, 280 So. 2d 431 (Fla. 1973).  Texas law, on the other hand, applies modified comparative negligence, which provides that "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent."  Tex. Civ. Prac. & Rem. Code Ann § 33.001 (West 2011).  In this case, application of Texas law would potentially deprive Plaintiff Mazak's recovery if Paul M. Mazak's fault is assessed at more than 50

---

[7] The remaining parties take no position on this issue so as to not prejudice Sharon Cox-Estep's and Denise Schippers's interests in this case.

percent.  Florida's comparative negligence framework is a product of judicial development refined by legislative enactment to provide for a proportionate recovery, however large or small in light of the relative fault of all wrongdoers, whether parties to the action or not.  *See Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993).

### 2. Contribution

Because Texas law retained the joint and several liability doctrine, contribution is permitted for a defendant who is held to be more than 50 percent responsible for the loss.  Tex. Civ. Prac. & Rem. Code Ann. § 33.015.  Under Florida law, however, the abolition of joint and several liability has eliminated the basis for contribution under Fla. Stat. § 768.31.  Thus, Texas law may be properly described as less fully developed than Florida law along the progression from contributory negligence as a complete bar to recovery to a pure comparative fault system where both parties' and non-parties' relative contribution to the ultimate harm are evaluated by the fact finder.

### 3. The Wrongful Death Acts

Florida requires lawsuits brought pursuant to the Florida Wrongful Death Act, Fla. Stat. §§ 768.16 *et seq.*, to be filed "by the decedent's personal representative, who shall recover [damages] for the benefit of the decedent's survivors and estate."  *Id.* § 768.20.  Under Florida law, Denise Schippers and Sharon Cox-Estep may not bring independent actions.  Under Texas law, Sharon Cox-Estep, as a surviving parent, and Denise Schippers, as a surviving adult child, are entitled to bring suit on their own behalf.  Tex. Civ. Prac. & Rem. § 71.004.  Accordingly, application of Florida law would operate to eliminate the claims of Sharon Cox-Estep and Denise Schippers, except to the extent they might make claims as dependant survivors for economic losses under Fla. Stat. § 768. 21.

**4. Survivor Damages**

Pursuant to Florida law, Denise Schippers, as a listed survivor in Plaintiff Christine Schippers's amended complaint, and Sharon Cox-Estep, as a listed survivor in Plaintiff Heidi Schippers's amended complaint, would potentially be able to recover the value of lost support and services, if any; any future loss of support and services from the date of death reduced to present value; and, any incurred medical or funeral expenses of the deceased. Fla. Stat. § 768.21(1). Texas law would entitle all Plaintiffs to a full scope of compensatory damages. *See Moore v. Lillebo*, 722 S.W.2d 683, 687-88 (Tex. 1986) (listing the damages allowed in wrongful death cases to be: pecuniary loss, loss of inheritance, mental anguish and loss of society and companionship).

**5. Survival Actions**

Under Florida law, "[w]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." Fla. Stat. § 768.20. Under Texas law, however, the heirs, the legal representative, and the estate of the decedent may bring a survival claim for pain and suffering of the decedent immediately preceding the decedent's death. Tex. Civ. Prac. & Rem. Code Ann. § 71.021.

D.   *Balancing of Competing Interests Through Policy Considerations*

The question now to be resolved is whether a conflict of laws exists, and if so, whether the State of Texas or the State of Florida has the most significant contacts to the parties in the case in light of the issues to be decided. The Court finds that Florida law should apply to the present actions in their entirety.

Upon a careful consideration of the parties' arguments, the Court is convinced that there is no real conflict between Florida's and Texas's law as applied to the instant facts, because the policies underlying Florida law would be furthered by the application of its laws while the policies of Texas law would not be advanced in any significant way by the application of its laws under these circumstances. *See Chapman*, 760 F. Supp. 2d at 1313 n.3. Defendant in this case, the Government, is neither a domiciliary of Florida nor Texas. *See Foster*, 768 F.2d at 1284. All decedents, the estates, the heirs, and the personal representatives are domiciled in Florida. As the state of domicile of all of the Plaintiffs, Florida has a significant interest in compensating its residents for wrongs committed against them. In this instance, where no Texas residents are in any way involved in the wrongful death actions, Texas retains only a slight interest, if any, in applying its wrongful death laws. As acknowledged by counsel at the hearing on this matter, the only Texas policy interest implicated is the deterrence of tortious conduct, a policy that is equally well satisfied by application of Florida law.

In Florida, the reason that the estate and each individual claimant must have their claims presented in a single action brought by the personal representative is to prevent numerous suits being filed against the same defendants arising out of the incident that caused the death of the decedent. "By requiring the personal representative to bring a single action, the [Florida] statute eliminates the potential for competing beneficiaries to race to judgment, preferential treatment of one or more beneficiaries in the disposition of their claims and, most significantly, multiple claims and lawsuits against the wrongdoer." *Funchess v. Gulf Stream Apts. of Broward Cnty., Inc.*, 611 So. 2d 43, 45 (4th DCA 1992). Thus, not only does Florida have a significant interest in compensating its residents, it

additionally has a significant interest in promotion of its judicial economy by allowing all claims to be disposed of in one proceeding.

If competing interests exist, however, the Court must determine which state's interest is the most "significant."  Texas courts do not consider the number of contacts with a particular state to be determinative; rather, it is necessary to turn to the factors delineated in § 6 to evaluate the contacts in light of Texas's and Florida's policies underlying each substantive issue.  *See Torrington Co.*, 46 S.W.3d at 848.

"The [§] 6(2) analysis turns in large part on the balance of competing interests contemplated by [§§] 6(2)(b) and 6(2)(c).  To perform this analysis, the [C]ourt must first identify the particular rule of law sought to be applied by each interested state.  The [C]ourt must then identify the purposes or policies which underlie each state's rule of law."  *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1569 (11th Cir. 1990) (internal citation omitted).  "In the final step of the [§§ 6(2)(b) and (c)] analysis, the [C]ourt must assess the degree to which the purposes underlying each rule would be furthered by the rule's application."  *Id.* at 1569-70 (citing Restatement (Second) § 145 comment e (internal quotation marks omitted) ("where more than one state has legitimate interest in application of its rule, court must determine whether the forum state's interest in the application of its rule outweighs the countervailing interest of the other interested state")).

The Court has previously identified the differing areas of law in the instant case.  *See supra* pages 6-8.  As to the purposes and policies, the parties do not dispute that the public policy underlying the wrongful death actions in both Florida and Texas is to "shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer."  Fla. Stat. § 768.17.  The parties

heavily dispute which state's law should apply as the application of one state's laws would lead to different outcomes in this case.  Thus, the Court will determine which state has the most significant relationship to the present dispute by analyzing the degree to which the purposes underlying each rule would be furthered by the rule's application.

Texas's interest in deterrence of tortious conduct within its borders is undeniable.  However, as to the application of pure versus modified comparative negligence, the Court finds that the pure comparative negligence would to a greater degree further the policy of shifting the losses to the wrongdoer.  The Texas Supreme Court in *Duncan* noted that, in their view, pure comparative negligence, as applied under Florida law, is preferable to modified comparative negligence, as applied under Texas law, recognizing "the relative inefficiency and reduced deterrent effect of modified comparative apportionment."  665 S.W.2d at 428.  Furthermore, the Court notes that Texas would have no conceivable reason to be concerned with the application of its modified comparative negligence to potentially limit a Florida resident's recovery in a dispute where no Texas resident is involved.[8]

As to the application of Florida versus Texas wrongful death statutes, the Court recognizes Texas's interest and concern with conduct within its borders.

> [D]amages for wrongful death, however, have little or nothing to do with conduct.  They are concerned not with how people should behave but with how survivors should be compensated.  The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there.

---

[8] The Court equally finds that applying Florida's no joint and several liability law would further the underlying purposes of both states' laws, and the right to contribution would effectively be extinguished.

*Judge*, 908 F.2d at 1572 (internal quotation marks and citation omitted).  Consequently, the Court finds that Florida has a greater interest, assuming that Texas has any interest, in limiting the survival actions and survivor damages as required under the Florida Wrongful Death Act.[9]  The Court is not unmindful of the fact that the occurrence of the crash within the borders of the State of Texas and the occurrence of at least some of the alleged misconduct on the part of FAA employees at the Houston Center weigh in favor of application of Texas law under the first two prongs of § 145(2).  However, unlike the selection of domicile which is a knowing, affirmative act of the parties, the situs of the crash is subject only to the vicissitude of fortune.  The scope of air traffic control at the Houston Center extends beyond the boundaries of Texas and could have been influencing the route and direction of the aircraft in any one of several served states.  Accordingly, these factors are entitled to little weight.

As demonstrated above, the primary interests and policy considerations favoring application of Texas law to a dispute arising out of the alleged negligent acts that occurred within its borders will not be compromised through application of Florida law in this instance.  In fact, application of Florida law will advance both Texas's interests in deterring tortious conduct within its borders and Florida's interests in adequately compensating its citizens for injuries inflicted upon them through others'

---

[9] The Court finds the Eleventh Circuit Court's opinion in *Foster v. United States*, 768 F.2d 1278 (11th Cir. 1985) to be distinguishable.  There, the only lineal descendant was a resident of Illinois at the time of the accident.  *Id.* at 1284.  Applying the Illinois's "most significant relationship" test, the court found that Illinois's "interest in deterring tortious conduct in Illinois and in compensating its citizen . . . is greater than Florida's interest in limiting recovery."  *Id.* (footnote omitted).  Additionally, the court recognized that Florida's legislature amended the statute at issue since the filing of that case to mirror the operative language of the Illinois's statute.  *Id.* n.12.  Therefore, the Court finds that the particular set of circumstances in these consolidated cases is distinguishable from those in *Foster*.

tortious conduct. Therefore, finding that the Texas's interests would not be prejudiced under the present circumstances, the Court holds that the State of Florida has the most significant relationship to the consolidated actions in this case. Thus, Florida law shall apply as to all issues.

## CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Plaintiffs DENISE SCHIPPERS's and SHARON COX-ESTEP's Motion to Apply Texas Law to Liability and Damages (Doc. No. 75), filed on September 2, 2011, is DENIED in its entirety. The Court finds that Florida law shall apply as to all issues.

2.      Defendant UNITED STATES OF AMERICA's Motion to Dismiss Complaint of Plaintiffs DENISE SCHIPPERS and SHARON COX-ESTEP (Doc. No. 26), filed on May 16, 2011, is GRANTED. Denise Schippers' and Sharon Cox-Estep's separate action (Case No. 5:11-cv-235) is hereby dismissed as only the personal representatives of the estates, on behalf of the survivors, may bring wrongful death actions under the Florida Wrongful Death Act.[10]

3.      Plaintiff REBA Y. MAZAK's Motion to Dismiss Counterclaim (Doc. No. 61), filed on August 4, 2011, is GRANTED to the extent that in light of the Court's holding that Florida law applies, the Government's claim for contribution is dismissed.

4.      CHRISTINA SCHIPPERS and HEIDI C. SCHIPPERS, as personal representatives of the Estates of Richard K. Schippers and Shane P. Schippers, respectively, shall file their second amended complaints in compliance with the Florida Wrongful Death Act and the Federal Rules of Civil Procedure. The second amended complaints are due on or before December 13, 2011.

---

[10] Accordingly, Denise Schippers and Sharon Cox-Estep lack capacity to sue for wrongful death under the law of their domicile, Florida. *See* Fed. R. Civ. P. 17(b)(1).

Defendant UNITED STATES OF AMERICA shall file its response, pursuant to Fed. R. Civ. P. 15(a)(3), within fourteen (14) days after service of the second amended complaint.

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida on November 29, 2011.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party

-14-